**FILED**

SEP 1 6 2022

Judge Sharon Johnson Coleman
United States District Court

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 22 CR 249 |
| v. | Judge Sharon Johnson Coleman |
| DANILO BARJAKTAREVIC | |

## PLEA AGREEMENT

1.     This Plea Agreement between the United States Attorney for the Northern District of Illinois, JOHN R. LAUSCH, JR., and defendant DANILO BARJAKTAREVIC, and his attorney, MATTHEW J. MCQUAID, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

### Charge in This Case

2.     The information in this case charges defendant with causing the use of an interstate facility to facilitate bribery, in violation of Title 18, United States Code, Section 1952(a)(3).

3.     Defendant has read the charge against him contained in the information, and that charge has been fully explained to him by his attorney.

4.     Defendant fully understands the nature and elements of the crime with which he has been charged.

### Charge to Which Defendant Is Pleading Guilty

5.     By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the information, which charges defendant with causing the use of an

interstate facility to facilitate bribery, in violation of Title 18, United States Code, Section 1952(a)(3).

## Factual Basis

6.      Defendant will plead guilty because he is in fact guilty of the charge contained in the information. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to Guideline § 1B1.3:

On or about May 11, 2021, at approximately 5:34 p.m., at Cook County, in the Northern District of Illinois, Eastern Division, DANILO BARJAKTAREVIC caused the use of a facility in interstate commerce, namely, an email account and associated communication network operated by the service provider Apple, with intent to promote, manage, carry on, and facilitate the promotion, management, and carrying on of an unlawful activity, namely, a violation of 720 ILCS 5/33-1(d) (bribery), and thereafter the defendant did perform, did cause to performed, and did attempt to perform an act to carry on and facilitate the promotion of and carrying on of said unlawful activity, in violation of Title 18, United States Code, Section 1952(a)(3).

## Background

The  Cook County Assessor's Office assessed the value of real property located in Cook County. A property's assessed value was used by Cook County to calculate

2

property taxes payable by the owners of real property, with lower taxes resulting from lower property assessments and higher taxes resulting from higher assessments.

The Cook County Board of Review (the "CCBOR") was an office created by the Illinois General Assembly and governed by three elected commissioners. The CCBOR was responsible for reviewing the assessment decisions of the Cook County Assessor's Office. Property taxpayers or their representatives could appeal property assessments determined by the Assessor's Office to the CCBOR, and the CCBOR could then revise the assessed value of a property.

BARJAKTAREVIC was a Deputy Member III with the CCBOR, and thus a public officer or employee. In this role, BARJAKTAREVIC was responsible for certain customer-service matters including assisting taxpayers, property owners, or their representatives with respect to appeals filed with the CCBOR.

**Defendant's Solicitation and Acceptance of Bribes**

In or around July 2020, BARJAKTAREVIC discussed with an individual ("CS-1") an arrangement by which BARJAKTAREVIC would lower property assessments on real properties in exchange for cash. CS-1 was, unbeknownst to BARJAKTAREVIC, a confidential source operating at the direction of the Federal Bureau of Investigation.

In or around January 2021, BARJAKTAREVIC agreed to assist in lowering the assessments for approximately 25 pieces of real property that BARJAKTAREVIC understood were owned by an associate of CS-1. BARJAKTAREVIC falsely told CS-1 that other employees at the CCBOR would assist in lowering the properties' assessed

3

values. BARJAKTAREVIC advised CS-1 that the cost of lowering the assessments would be $2,000 for each commercial property, and $1,000 for each residential property, for a total cost of approximately $43,000 in bribes. BARJAKTAREVIC told CS-1 that half of this money would be due up front, and the second half would be due later. CS-1 later provided BARJAKTAREVIC property index numbers identifying each piece of real property, so that BARJAKTAREVIC would know which assessments needed to be altered in return for the bribe payments.

On or about January 7, 2021, BARJAKTAREVIC met with CS-1, and CS-1 made a cash bribe payment of approximately $21,000 to BARJAKTAREVIC. At the meeting, BARJAKTAREVIC updated CS-1 with information about the status of the appeals on the 25 pieces of real property identified by CS-1. BARJAKTAREVIC received, retained, and agreed to accept the $21,000, which he, as a public officer or employee, was not authorized by law to accept, knowing that it was promised and tendered with intent to cause BARJAKTAREVIC to influence the performance of an act related to his employment or the function of any public officer or employee, including the review and reduction of property assessments through appeals to the CCBOR.

In furtherance of the bribery scheme, on or about May 11, 2021, at approximately 5:34 p.m., BARJAKTAREVIC used his Apple iCloud email account and Apple's associated communication network, which was a facility in interstate commerce, to email CS-1. In the email, BARJAKTAREVIC provided CS-1 with a summary of the status of the property assessment appeals for the approximately 25

4

pieces of real property identified by CS-1. BARJAKTAREVIC's email noted, in certain instances, whether and the extent to which a property's assessment had been lowered. The email also noted whether additional documents were needed for certain appeals.

On or about July 1, 2021, BARJAKTAREVIC and CS-1 met again, and BARJAKTAREVIC accepted a second bribe payment of approximately $22,000, knowing that the payment had been tendered to him to influence the performance of an act related to his employment or the function of any public officer or employee, including the review and reduction of property assessments through appeals to the CCBOR.

<u>**Maximum Statutory Penalties**</u>

7.      Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

a.      A maximum sentence of 5 years' imprisonment. This offense also carries a maximum fine of $250,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater. Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

b.      Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty imposed.

## **Sentencing Guidelines Calculations**

8.     Defendant understands that in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

9.     For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a.     **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2021 Guidelines Manual.

6

b.      **Offense Level Calculations**.

i.      Pursuant to Guideline § 2E1.2(a), the base offense level is the offense level applicable to the underlying unlawful activity. Pursuant to Application Note 2 to Guideline § 2E1.2(a)(2), because the underlying unlawful conduct violates states law, that is, the Illinois bribery statute (720 ILCS 5/33-1(d)), the offense level corresponding to the most analogous federal offense should be used. The Guideline provision applicable to the most analogous federal offense is Guideline § 2C1.1. The base offense level is therefore 14 pursuant to Guideline § 2C1.1(a)(1), because defendant was a public official.

ii.      Pursuant to Guideline § 2C1.1(b)(2) and § 2B1.1(b)(1)(D), six levels are added because the value of the payment obtained by the defendant was more than $40,000 and less than $95,000.

iii.      Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

iv.      In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting

7

the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

      c.    **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

      d.    **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, the anticipated offense level is 17, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 24 to 30 months' imprisonment, in addition to any supervised release and fine the Court may impose.

      e.    Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation.

Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

10.    Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

### Agreements Relating to Sentencing

11.    Each party is free to recommend whatever sentence it deems appropriate.

12.    It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

13.    The parties further agree, pursuant to Title 18, United States Code, Section 3583(d), that the sentence to be imposed by the Court shall include, as a

9

condition of any term of supervised release or probation imposed in this case, a requirement that defendant repay the United States $21,000 as compensation for government funds that defendant received during the investigation of the case.

14.     Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

15.     This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 22-CR-249.

16.     This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

17.     Defendant understands that nothing in this Agreement shall limit the Internal Revenue Service in its collection of any taxes, interest or penalties from defendant and his spouse.

## Waiver of Rights

18.     Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.     **Right to be charged by indictment**. Defendant understands that he has a right to have the charge prosecuted by an indictment returned by a concurrence of twelve or more members of a grand jury consisting of not less than sixteen and not more than twenty-three members. By signing this Agreement, defendant knowingly waives his right to be prosecuted by indictment and to assert at trial or on appeal any defects or errors arising from the information, the information process, or the fact that he has been prosecuted by way of information.

b.     **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charge against him, and if he does, he would have the right to a public and speedy trial.

i.     The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.     If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

11

iii.     If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt. The jury would have to agree unanimously before it could return a verdict of guilty or not guilty.

iv.     If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v.     At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi.     At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii.     At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

12

c.     **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

19.     Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

20.     Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charge against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

21.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information,

13

may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

22.     For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

### Other Terms

23.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

24.     Regarding matters relating to the Internal Revenue Service, defendant agrees as follows (nothing in this paragraph, however, precludes defendant and his

spouse from asserting any legal or factual defense to taxes, interest, and penalties that may be assessed by the IRS):

        a.     Defendant agrees to cooperate with the Internal Revenue Service in any tax examination or audit of defendant and his spouse which directly or indirectly relates to or arises out of the course of conduct that defendant has acknowledged in this Agreement, by transmitting to the IRS original records or copies thereof, and any additional books and records that the IRS may request.

     25.     Defendant will not object to a motion brought by the United States Attorney's Office for the entry of an order authorizing disclosure of documents, testimony and related investigative materials which may constitute grand jury material, preliminary to or in connection with any judicial proceeding, pursuant to Fed. R. Crim. P. 6(e)(3)(E)(i). In addition, defendant will not object to the government's solicitation of consent from third parties who provided records or other materials to the grand jury pursuant to grand jury subpoenas, to turn those materials over to the Civil Division of the United States Attorney's Office, or an appropriate federal or state agency (including but not limited to the Internal Revenue Service), for use in civil or administrative proceedings or investigations, rather than returning them to the third parties for later summons or subpoena in connection with a civil or administrative proceeding involving, or investigation of, defendant and his spouse. Nothing in this paragraph or the preceding paragraph precludes defendant and his spouse from asserting any legal or factual defense to taxes, interest, and penalties that may be assessed by the IRS.

26.     Defendant agrees to waive and abandon any right, title, or interest in the following firearms that he turned over to law enforcement on or about December 1, 2021, including: two 9-millimeter Beretta 92FSs; a FNH F.S10M; a 12-gauge Savage 220B; a 9-millimeter Zastava 99; a Zastava M57; a 12-gauge Mossberg 500; a Smith & Wesson 500 Magnum; a .380-caliber Walther PK 380; a 9-millimeter Tara TM-9; a .45-caliber Hecker & Koch USP Compact; and a Zastava M70AB2. Defendant understands that the government, after publication of notice to any others who may have an interest in the property, will seek an order of abandonment from the Court, thereby authorizing the United States to destroy or otherwise dispose of such property according to law. Defendant understands that abandonment of this property shall not be treated as satisfaction of any fine, cost of imprisonment, or any other penalty the Court may impose.

27.     Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

28.     Defendant understands that the government has the right to seek defendant's truthful testimony before a grand jury or a district court.

## Conclusion

29.     Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

30.     Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any

16

term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

31.     Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

32.     Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

33.     Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: ___9/16/22___

JOHN R. LAUSCH, JR.
United States Attorney

DANILO BARJAKTAREVIC
Defendant

THOMAS P. PEABODY
Assistant United States Attorney

MATTHEW J. MCQUAID
Attorney for Defendant

18