UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 22 CR 249 |
| v. | ) | |
| | ) | Judge Sharon Johnson Coleman |
| DANILO BARJAKTAREVIC | ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

In two parking-lot meetings, the defendant, Danilo Barjaktarevic, took $43,000 in cash in exchange for his help in fixing property assessments. He exploited his position at the Cook County Board of Review to enrich himself, and in doing so, risked confidence in the County's property-tax system and furthered a "Chicago is corrupt" narrative. The government submits that a Guidelines sentence—between 24 to 30 months' imprisonment—is sufficient, but not greater than necessary, to accomplish the goals of sentencing under 18 U.S.C. § 3553(a).

**I. Background**

The defendant began working at the Board of Review in 1994. PSR ¶ 56. His most recent role was a Deputy Member III, which entailed customer-service responsibilities. Plea ¶ 6. In Cook County, a property's assessment is an important factor in determining one's property taxes; lower assessments result in lower taxes. *Id.* The Board of Review, where the defendant worked, reviewed assessment decisions made by the Cook County Assessor's Office and appeals filed by taxpayers. *Id.*

In July 2020, the defendant met with an individual—who, unbeknownst to the defendant, was a confidential source ("CS") working at the FBI's direction—and they

discussed lowering property taxes in exchange for cash. *Id.* A few months later, the defendant agreed to help lower the assessments for 25 pieces of Cook County property.

The defendant set the terms for the corrupt bargain: $2,000 for each piece of commercial property, $1,000 for each piece of residential property, and half would be due upfront. *Id.* The defendant claimed that he was only a middleman, and he falsely told the CS that others at the Board of Review would help him reduce the assessments. After the CS provided the property-index numbers (or "PINs") for the 25 properties he wanted reduced, the two agreed to meet in January 2021. The defendant assured the CS that the deal was solid: "Hey, you see I'm not calling you. I'm not, like me and you work the same way. When I tell you something, that's it…. I'm the guarantee, man. I'm the guarantee." About a week later, the two met in a parking lot in the suburbs in January 2021. The defendant got into the CS's car, and the CS gave the defendant $21,000 in cash.

The defendant updated the CS on the status of the reductions in April 2021. And in May 2021, the defendant sent the CS an email with the results of, or updates on, the appeals for each of the 25 PINs. *Id.* In a later call, the defendant explained that "my guys are legit," commented on the "good-ass fucking cuts" that the CS's associate had received, and reminded the CS that the second payment was due.

The two agreed to meet in early July 2021. They did so again in a suburban parking lot, and the defendant accepted the second bribe payment of $22,000. After being confronted by the FBI, the defendant admitted his wrongdoing: "I took $43,000

… in return for promising to help reduce the property taxes for … 25 properties… I did not share the money with anyone else." *See* Ex. A to Gov't Version.

This was not the first time the defendant had accepted bribes from taxpayers. As noted in the government's version, the defendant admitted that, on one occasion, he accepted $1,500 in cash from a taxpayer for help with property taxes (though he owed $500 back because he could not perform part of the taxpayer's request). A search of the defendant's cellphone revealed other, similar examples, like a $1,000 payment from a taxpayer in January 2021 and a $1,500 putative payment from another taxpayer in Spring 2021.

On April 28, 2022, the government filed the information in this case charging the defendant with one count of violating § 1952(a)(3) for his bribery scheme involving the CS. R. 1. The defendant pleaded guilty to the information September 16, 2022, the same day of his arraignment. R. 7. This Court has set sentencing for January 24, 2023. R. 14.

**II. Advisory Guidelines**

With one exception, the government agrees with the PSR's Guidelines calculation. *See* PSR ¶¶ 13-23, 64. The base offense level is 14 under §2E1.2(a) and § 2C1.1(c)(a)(1), because the underlying conduct violates state bribery law (720 ILCS 5/33-1(d)). *See* U.S.S.G. § 2E1.2, application note 2. Six levels are added under § 2C1.1(b)(2) and § 2B1.1(b)(1)(D), because the value of the payment obtained was $43,000. The defendant has accepted a responsibility, leading to a three-level

3

reduction. U.S.S.G. §§ 3E1.1(a), (b). The defendant has a criminal-history category of I. PSR ¶

The government does not believe that two levels are added for multiple bribes under § 2C1.1(b)(1). *See* PSR ¶ 14. According to the Guidelines, the fact that the charged scheme involved two payments, one upfront and one after delivery, does not warrant the enhancement. *See* § 2C1.1(b)(1), application note 2 ("Related payments that, in essence, constitute a single incident … are to be treated as a single bribe."). Nor, in this case, does the government believe that the previous bribes from other taxpayers amount to relevant conduct, as those separate payments did not occur "during the commission" of the charged offense, "in preparation" for it, or "in the course" of covering it up.[1]

With an offense level of 17 and a criminal-history category of I, the Guidelines range is 24 to 30 months' imprisonment, plus any term of supervised release and a fine.

## III. The Section 3553(a) Factors

The Sentencing Guidelines provide a starting point for sentencing. *Gall v. United States*, 552 U.S. 38, 49-50 (2007). "The Guidelines remain an essential tool in creating a fair and uniform sentencing regime across the country." *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005). The Court must consider the factors set forth in 18 U.S.C. § 3553(a) in determining an appropriate sentence. As explained below, a Guidelines-range sentence is sufficient but not greater than necessary to

---

[1] These instances were also not part of the defendant's plea agreement, and they were offered by the government in its version of the offense as a consideration under § 3553(a).

4

reflect the seriousness of the offense, promote respect for the law, provide just punishment, and afford adequate deterrence.

### A. Nature and Circumstances of the Offense

This offense is serious. The defendant used his position as a public official to collect cash bribes from taxpayers. There was nothing subtle or ambiguous about defendant's actions. He made clear to the CS that these would be illicit bribes, even accepting bulk cash payments in a parking lot, and he spun a story about how he was merely a middleman, in an apparent attempt to justify the high cost of his purported services: $1,000 or $2,000 per property to have an assessment lowered.

The defendant, as a Cook County resident and decades-long Board of Review employee, must have known why someone might be willing to pay that high cost. According to at least one source, Illinois ranks second in the country for highest property taxes.[2] The defendant took advantage of that fact, and then compounded the problem. Not only are property taxes in Cook County burdensome but, according to defendant's conduct, they could be set corruptly in exchange for cash. Such a notion is salt in the wound for the County's honest taxpayers and public officials.

Courts have routinely recognized the seriousness of public-corruption offenses, particularly in this City. For good reason: a recent report found that Chicago was

---

[2] Lisa Rigoni, *Illinois Again Ranks No. 2 in U.S. for Highest Property Taxes*, Illinois Policy (Mar. 4, 2021), available at https://www.illinoispolicy.org/illinois-again-ranks-no-2-in-u-s-for-highest-property-taxes (Jan. 10, 2023).

America's most corrupt city for the third year in a row.[3] The defendant, of course, did not create that reputation, but his conduct helped further it. Corruption of the sort here—taking cash in exchange for promising to lower what the payer owes to the government, at the public's expense—is a serious crime that erodes much-need confidence in local governments. The Court's sentence should reflect that fact.

### B. History and Characteristics of the Defendant

The defendant is a 49-year-old man, with a wife, two adult children, and one teenager. PSR ¶ 42. He reported growing up in a loving home, *id.* ¶ 40, and after moving to Montenegro as a child, his family returned to the U.S. during his teenage years, *id.* ¶ 41. By all accounts, his family is supportive. *See, e.g.*, *id.* ¶ 44. The defendant also, as noted, worked for the Board of Review for almost three decades before he was terminated after the allegations in this case became public. To his credit, he has since found new employment.

A Guidelines sentence is sufficient, but not greater than necessary, to account for the defendant's personal history. In his favor, the defendant has been a consistently present husband and father. At the same time, however, the defendant had a good job for decades, yet he used his position to take cash from taxpayers. The defendant had a supportive family, but he exploited his public position to enrich himself. While the government acknowledges the mitigative nature of the defendant's support for his family, it provides little by way of explanation for his misconduct.

---

[3] Heather Cherone, *Three-Peat: Chicago Ranks No. 1 In Corruption*, Report Finds, WTTW News (May 11, 2022), available at https://news.wttw.com/2022/05/11/three-peat-chicago-ranks-no-1-corruption-report-finds (Jan. 10, 2023).

6

### C. Seriousness of the Offense and the Need to Promote Respect for the Law, Provide Just Punishment, and Afford Adequate Deterrence

The Court's sentence should not only reflect the seriousness of the offense but also provide deterrence, to this defendant and to other public officials. In this case, the defendant does not have particularly noteworthy criminal history. The Court's sentence should nevertheless deter him from future crimes.

More importantly, the Court's sentence should send a message that public-corruption offenses are serious crimes that may well result in prison time. Public officials pay particularly close attention to criminal prosecutions, and judges in this District have rejected the argument that there is no deterrent effect to incarceration. As Judge Durkin explained during a recent public-corruption sentencing:

> Public corruption investigations are endemic in this district, and that's not an accident. The Chicago Metra area has historically been one of the most corrupt regions in the country and it's been that way for a long time. That pervasive corruption requires that when it is detected and when it is prosecuted, it is treated seriously and severely. Politicians do pay attention to the cases that are brought in this building. They talk about them; they take note… the fact that public corruption remains so pervasive is a reflection that politicians perceive that the benefits to corrupt behavior can outweigh the risks. Maybe they see too many of their colleagues getting away with it and the temptation gets too strong. If that's the case, the need for significant sentences, even for older defendants with no prior criminal history, is strong.

Sentencing Tr. at 14-13, *United States v. Presta*, 20 CR 475 (ECF No. 57) (N.D. Ill. Apr. 26, 2022). The same is equally true for public officials like the defendant. Crimes like the defendant's "diminish[ ] the credibility of honest public services" and "give[ ] another black eye to the Chicago area." *Id.* This Court should similarly conclude that

7

the need for general deterrence in this case is pressing and a prison sentence is warranted.

### IV. Supervised Release

The government recommends a period of supervised release following any term of incarceration. This defendant engaged in a serious offense, and lost his nearly three-decade career as a result. A period of supervised release will provide the defendant with the supervision and assistance to help him reintegrate and become a law-abiding, productive member of society. The government further requests that the Court impose the conditions recommended in the PSR, which are appropriate to promote respect for the law, deter the defendant from committing future crimes, protect the public from further crimes by him, and facilitate his supervision by the Probation Office.

### V. Conclusion

For these reasons, the government seeks a sentence within the Guidelines range of 24 to 30 months' imprisonment. Such a sentence is well supported under § 3553(a), as it will reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, and properly account for the defendant's history and characteristics.

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

Dated: January 10, 2023      By:     /s/ *Thomas P. Peabody*
Thomas P. Peabody
Assistant U.S. Attorney
219 South Dearborn Street, Fifth Floor
Chicago, Illinois 60604
(312) 353-4307

9